

FILED

4·23 -14

APR 2 3 2014

JUDGE JOAN H. LEFKOW
UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 12 CR 577 |
| vs. | ) | Judge Joan Humphrey Lefkow |
| | ) | |
| GUAN YING LI, | ) | UNDER SEAL |
| also known as "Henry Li" | ) | |

## PLEA AGREEMENT

1.      This Plea Agreement between the United States Attorney for the Northern District of Illinois, ZACHARY T. FARDON, and defendant GUAN YING LI, also known as "Henry Li," and his attorney, BEAU B. BRINDLEY, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2.      The information in this case charges defendant with knowingly attempting to provide material support and resources, namely, tangible property, and military and communications equipment, to a foreign terrorist organization, namely, Shining Path, in violation of Title 18, United States Code, Section 2339B(a)(1).

3.      Defendant has read the charge against him contained in the information, and that charge has been fully explained to him by his attorney.

4.      Defendant fully understands the nature and elements of the crime with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5.    By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the information, which charges defendant with knowingly attempting to provide material support and resources, namely, tangible property, and military and communications equipment, to a foreign terrorist organization, namely, Shining Path, in violation of Title 18, United States Code, Section 2339B(a)(1).

## Factual Basis

6.    Defendant will plead guilty because he is in fact guilty of the charge contained in the information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

Beginning no later than in or around March 2011, and continuing until in or around February 2012, defendant knowingly attempted to provide material support and resources, namely, tangible property, and military and communications equipment, to Shining Path, knowing that Shining Path was a designated foreign terrorist organization and that Shining Path had engaged and was engaging in terrorist activity and terrorism, in violation of Title 18, United States Code, Section 2339B(a)(1).

More specifically, Shining Path was an organization based in Peru whose original goal was to overthrow the government and social structure of Peru and neighboring countries and replace them with a Maoist socialist system. Shining Path was designated by the Secretary of State as a foreign terrorist organization on October 8, 1997, and redesignated on October

2

8, 1999, and October 5, 2001, pursuant to Section 219 of the Immigration and Nationality Act.

Starting sometime in or around March 2011, defendant began communicating by email and telephone with an individual who, unbeknownst to defendant, was an undercover law enforcement agent ("UC"). Based on the email and phone communications between defendant and the UC, defendant understood that the UC was a businessman located in a suburb of Chicago, Illinois. Defendant also understood that the UC was attempting to procure various items of military equipment for Shining Path, and that Shining Path would use such items in its attacks against United States and Peruvian military forces. With the understanding that the items would be provided to and used by Shining Path, defendant procured and arranged to have shipped to locations designated by the UC via five separate shipments, the following items: five thermal batteries used in the HN-5 man-portable air-defense weapon system ("MANPAD"), eight PLA Type 99 Paratrooper Assault Harnesses, eight PLA 65 Paratrooper Backpacks, eight PLA WJQ-308 shovels, two PLA TBR-115 VHF Radios, and four SHR-PLV200 portable infrared night-vision systems.

On or about May 16, 2011, defendant shipped a parcel containing eight MJQ308 shovels, eight Type 65 backpacks, and eight Type 99 assault harnesses from Hong Kong. On or about May 19, 2011, that parcel was delivered to an address in Elmhurst, Illinois that was designated by the UC (the "UC Illinois address"). In late May 2011, defendant shipped, from China to the UC Illinois address, a parcel containing two TBR-115 VHF radios, two

3

TBR-115 headsets, and two battery chargers to the UC Illinois address. This parcel was received on or about June 2, 2011. On or about June 2, 2011, defendant shipped, from China to the UC Illinois address, a parcel containing two batteries for the TBR-115 radios along with related documentation. This parcel was received on or about June 7, 2011.

On or about August 18, 2011, defendant shipped, via DHL, five HN-5 thermal MANPAD batteries, from China to an address in Central America that was designated by the UC (the "UC Central America address"). This shipment was received on August 24, 2011.

On or about January 6, 2012, defendant arranged for and caused to be shipped, from China to the UC Central America address, a package containing four SHR-PLV200 portable infrared night-vision systems.

When defendant shipped or caused to be shipped the packages of equipment described above, he understood and intended that the equipment would ultimately be received and used by Shining Path. He also knew that Shining Path was designated by the United States as a foreign terrorist organization. Defendant also knew that Shining Path was involved in terrorism and terrorist activities.

7.    Defendant, for purposes of computing his sentence under Guideline § 1B1.2, stipulates to having committed the following additional offense:

Beginning no later than in or around March 2011, and continuing until in or around August 2011, within the Northern District of Illinois, Eastern Division, and elsewhere, defendant knowingly acquired, transferred, directly and indirectly, and exported parts

4

designed for use in assembling and fabricating an anti-aircraft missile system, namely, five thermal batteries, and the offense occurred in and affected interstate and foreign commerce, in violation of Title 18, United States Code, Section 2332g(a)(1)(C).

More specifically, beginning in or around March 2011, and continuing until in or around August 2011, defendant agreed to transfer and export, procured, and caused to be transferred and exported five HN-5B thermal batteries from Hong Kong to the UC Central America address. These thermal batteries were designed for use in the HN-5 anti-aircraft weapon system, a Chinese-made surface-to-air, man-portable, air-defense weapon system ("MANPAD"), which was capable of making tail-on engagements against jet aircraft or head-on engagements against propeller-driven aircraft and helicopters under visual aiming conditions.

During this time frame, defendant negotiated the price of the thermal batteries with the UC. Defendant also solicited a Chinese manufacturer of military equipment to produce the thermal batteries. Defendant provided the manufacturer with specifications for the thermal batteries, including that the batteries were to have no identifiable exterior markings. Defendant accepted a wire transfer from the UC of $6,790 as payment for the thermal batteries.

On or about August 18, 2011, defendant, with the understanding that they would be used by Shining Path to conduct attacks against United States and Peruvian military forces, caused the thermal batteries to be transferred and exported by arranging to have them shipped

from a location in Hong Kong to the UC Central America address via an international shipping company.

When defendant shipped or caused to be shipped the thermal batteries, he understood and intended that the equipment would ultimately be received and used by Shining Path. He also knew that Shining Path was designated by the United States as a foreign terrorist organization. Defendant also knew that Shining Path was involved in terrorism and terrorist activities.

8.      The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crime and related conduct.

## Maximum Statutory Penalties

9.      Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

        a.      A maximum sentence of 15 years' imprisonment. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

        b.      In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

6

## Sentencing Guidelines Calculations

10.     Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

11.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.     **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2013 Guidelines Manual.

b.     **Offense Level Calculations.**

### Offense of Conviction

i.     Pursuant to Guideline § 2M5.3(a), the base offense level for the offense of conviction is 26.

ii.     Pursuant to Guideline § 2M5.3(b)(1)(E), the offense level is increased by 2 because defendant had the intent, knowledge, or reason to believe that the material support and resources would be used to commit or assist in the commission of a violent act.

   iii. Pursuant to Guideline § 3A1.4(a), the offense level is increased by 12 because the offense is a felony that involved, or was intended to promote, a federal crime of terrorism.

   iv. The total offense level for the offense of conviction is 40.

### Stipulated Offense

   v. Pursuant to Guideline § 2K2.1(a)(7), the base offense level for the stipulated offense is 12.

   vi. Pursuant to Guideline § 2K2.1(b)(3), the offense level is increased by 15 because the offense involved a destructive device that is a portable rocket, a missile, or a device for use in launching a portable rocket or a missile.

   vii. Pursuant to Guideline § 3A1.4(a), the offense level is increased by 12 because the offense is a felony that involved, or was intended to promote, a federal crime of terrorism.

   viii. The total offense level for the stipulated offense is 39.

### Grouping of Counts

   ix. Pursuant to Guideline § 3D1.2(b), the offense of conviction and the stipulated offense are grouped.

   x. Pursuant to Guideline § 3D1.3, the combined offense level is 40, the highest level among the offenses within the Group.

xi.     Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

xii.     In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.     **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero.   Pursuant to Guideline § 3A1.4(b), defendant's criminal history category is VI.

d.     **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 37, which, when

9

combined with the anticipated criminal history category of VI, results in an anticipated advisory Sentencing Guidelines range of 360 months' to life imprisonment. However, because the statutory maximum sentence for the offense of conviction is 180 months, pursuant to Guideline § 5G1.1(a), the applicable guideline sentence is 180 months, in addition to any supervised release and fine the Court may impose.

         e.      Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

         f.      Both parties expressly acknowledge that this Agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines.

The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Cooperation

12.    Defendant agrees he will fully and truthfully cooperate in any matter in which he is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil, or administrative proceeding. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

### Agreements Relating to Sentencing

13.    At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this Agreement, then the government shall recommend a sentence of 180 months' imprisonment, and as set forth in Paragraph 15 below, shall not seek additional criminal charges for the conduct described in Paragraph 6 (the offense of conviction) and Paragraph 7 (the stipulated offense) of this agreement. Defendant shall be free to recommend any sentence.

14.    It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set

11

forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

15. In consideration for defendant's agreement to cooperate fully and truthfully as set forth in Paragraph 12 above, the United States agrees not to seek additional criminal charges in the Northern District of Illinois against defendant for the violation of 18 U.S.C. § 2332g(a)(1)(C) described as a stipulated offense in Paragraph 7 above. However, nothing in this Agreement limits the United States in prosecution of defendant in other districts or for crimes not disclosed in this agreement or defendant's proffer to the government, except as expressly set forth in this Agreement.

16. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

17. Defendant agrees that the United States may enforce collection of any fine imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

18. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 12 CR 577.

19.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

20.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.     Right to be charged by indictment. Defendant understands that he has a right to have the charge prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

b.     **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charge against him, and if he does, he would have the right to a public and speedy trial.

13

i.      The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.      If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.      If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

iv.      If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.      At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would

14

be able to confront those government witnesses and his attorney would be able to cross-examine them.

        vi.    At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

        vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

        c.    **Waiver of appellate and collateral rights**. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, in exchange for the concessions made by the United States in this Agreement. In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, and (in any case in which the term of imprisonment and fine are within the

15

maximums provided by statute) his attorney's alleged failure or refusal to file a notice of appeal, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

d.      Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

21.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing, including the nature and extent of defendant's cooperation.

16

22.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

23.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

17

**Other Terms**

24.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

25.     Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the Court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his guilty plea may entail, even if the consequence is his automatic removal from the United States.

**Conclusion**

26.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

27.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the

18

Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

28.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

29.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

30. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _April 23, 2014_

_Zachary T. Fardon /mss_
ZACHARY T. FARDON
United States Attorney

GUAN YINGLI
Defendant

SHARON R. FAIRLEY
Assistant U.S. Attorney

BEAU B. BRINDLEY
Attorney for Defendant _by Michael Thompson_

20