UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | No. 12 CR 577 |
| v. | ) | |
| | ) | Hon. Joan Humphrey Lefkow |
| | ) | |
| GUAN YING LI | ) | |

**SENTENCING MEMORANDUM**

NOW COMES Defendant GUAN YING LI, by and through his attorney, Beau B. Brindley and presents the following sentencing memorandum:

**I.     District Courts Have Broad Discretion To Deviate From The Guidelines For The Purpose Of Imposing A Fair And Just Sentence.**

When determining the appropriate sentence for an individual defendant, a sentencing court should impose the shortest possible sentence that (A) reflects "the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" (B) deters future criminal conduct; (C) protects the public from the defendant and (D) provides the defendant with the "needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C.A. § 3553. When determining whether a given sentence is sufficient to effectuate these purposes, district courts are directed to consider:

1. "the nature and circumstances of the offense and the history and characteristics of the defendant;" 18 U.S.C. § 3553(a).

2

2. "the kinds of sentences available;" 18 U.S.C. § 3553(a).
3. the defendant's Guideline range;
4. Any relevant policy statements;
5. "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" 18 U.S.C. § 3553(a)
6. "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

A defendant's guideline range is advisory. *United States v. Booker,* 543 U.S. 220, 244 (2005). Under *Booker* and its progeny sentencing courts may not treat the applicable guideline range as presumptively reasonable. *Nelson v. United States,* 129 S.Ct. 890, 891 (2009). Instead, the advisory guideline range must be weighed against the other factors listed in 18 U.S.C. § 3553(a). *Kimbrough v. United States,* 552 U.S. 85, 92 (2007). In the pursuit of a just sentence, district courts may devise policies and impose sentences that are at odds with the policies articulated by the Federal Sentencing Guidelines. *Spears v. United States,* 129 S.Ct. 840 (2009). Regardless of what the applicable guideline range suggests, § 3553 directs the district court to impose a sentence no longer than necessary to accomplish the purposes of punishment in 18 U.S.C.A. § 3553(a)(2).

In this case, there are several factors that compel a sentence well below the guidelines range and the statutory maximum. First, Mr. Li's guidelines level – and, indeed, his participation in the offense as a whole – were largely driven by imperfect and sentencing entrapment on the part of federal law enforcement officers. Second, Mr. Li's personal history and characteristics demonstrate that his participation in this offense constituted aberrant behavior, which militates in favor of sentence below the guideline range. Third, Mr. Li's lack of criminal history suggests that a lengthy prison sentence would not be required in order to further the goals of deterrence or incapacitation. Fourth, Mr. Li's willingness to accept

3

responsibility for his conduct and to provide substantial assistance and cooperation to the government demonstrate that he is uniquely amenable to rehabilitation.

## II.    SENTENCING ENTRAPMENT

Prior to *Booker*, several circuits recognized the possibility of a sentencing reduction under U.S.S.G. § 5K2.12 in cases involving "conduct by the government that does not give rise to an entrapment defense but that is nonetheless aggressive encouragement of wrongdoing." *United States v. Bala,* 236 F.3d 87, 92 (2d Cir.2000) (internal citations and quotations omitted); *see, also*; *United States v. Barth,* 990 F.2d 422, 424-25 (8th Cir.1993) (recognizing that sentencing entrapment generally is a valid departure ground but not on facts of that case); *United States v. Mejia,* 559 F.3d 1113 (9th Cir.2009). This doctrine was grounded in a policy statement under U.S.S.G. §5K2.12, which allowed for downward variances where: "the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense." U.S.S.G. 5k2.12.

The Seventh Circuit defines sentencing entrapment as occurring when "the government causes a defendant initially predisposed to commit a lesser crime to commit a more serious offense." *United States v. Turner*, 569 F.3d 637 (7th Cir. 2009); see also, *United States v. Knox*, 573 F.3d 441 (7th Cir. 2009).

*Booker* renders Section 5K analysis both more and less difficult. It is no longer necessary for the defendant to establish each of the technical requirements listed in the Guidelines. However, the defendant must establish that a reduction effectuates the purposes of punishment articulated in § 3553(a). Following *Booker*, imperfect entrapment can now be considered under § 3553(a). *See, e.g.*, *United States v. Beltran*, 571 F.3d 1013, (10th Cir. 2009) ("but a defendant's claim of sentencing factor manipulation may also be considered as request for a variance from

4

the applicable guideline range under the § 3553(a) factors").

Whether phrased within the context of U.S.S.G. § 5K2.12 or § 3553(a), the circumstances surrounding Mr. Li's involvement in this case are certainly worthy of consideration under § 3553(a). Entrapment involves two parts: inducement and predisposition. There is no question that Mr. Li was induced into committing this offense. Mr. Li responded to an overture to his company by an undercover law enforcement agent. The illegal items were specifically requested by the agent, not initially offered by Mr. Li of his own volition. Mr. Li was not soliciting business in the field of international arms dealing, but taking advantage of an opportunity that was presented to him. Mr. Li never, on his own, offered or suggested that he could provide illegal items to the undercover agent. Everything was specifically requested by the government.

The government in this case proposed a plan that would elevate Mr. Li from low-level intermediary arranging sales of various equipment (admittedly, without regard to its legality) to a collaborator with terrorist organizations half a world away. There is no evidence that the Shining Path or provision of thermal MANPAD batteries would have ever occurred to Mr. Li without the involvement of the undercover agent. Every single guideline enhancement applied to Mr. Li's offense level in the PSIR is a direct result of intentional manipulation by an undercover law enforcement agent apparently intent on artificially inflating the applicable sentence as highly as possible. The agent determined the nature and number of the products that would be purchased. The agent inexplicably designated that they would be used by an organization conducting terrorist attacks on Peruvian and US military personnel despite the fact that disclosure of that specific information was wholly unnecessary to facilitate the transaction. The only purpose of such a disclosure was to artificially increase the possible sentencing range. It was again the agent who requested that the thermal batteries be made untraceable and free of identifying marks. Mr.

5

Li made no reference to this on his own. Once again, this was done in an obvious effort to manipulate the applicable sentencing range. This is a prototypical and blatant example of sentencing entrapment and should be very carefully considered under §3553.

It is true that Mr. Li was already engaged in the business of brokering deals for various equipment, a small portion of which may have been in violation of other nations' laws. The government may take the position that he would sell almost anything as part of the operation of his business and was consequently predisposed to engage in almost any illegal trafficking regardless of how nefarious the purpose of his customers may have been. However, there is no evidence that Mr. Li ever thought of or ever would think of dealing in equipment used to facilitate the use of anti-aircraft missiles or dealing with communist terror organizations in South America before the government approached him and specifically broached these topics. This is the very definition of sentencing entrapment. The government could have proposed any number of lesser offenses. They did not. They government chose the most innocuous item (batteries) that they believed could qualify for the most serious weapons and terrorism provisions of the guidelines, despite the fact that there is no evidence that it would have occurred to Mr. Li on his own. This intentional manipulation of the guidelines must be discouraged.

The most analogous guideline that might apply to Mr. Li if he was operating out of the United States is USSG §2M5.2—exportation of arms, munitions, or military equipment without a required export license. Application note 1 to this section includes the following: "The base offense level assumes that the offense conduct was harmful or had the potential to be harmful to a security or foreign police interest of the United States." The offense level would be 26 for an American selling military equipment such as these thermal batteries to other countries without a license. Mr. Li bears no more criminal culpability than such an offender. Without the

6

government's intentional efforts to introduce a terror organization into this offense, request a specific form of battery that qualifies as a firearm under 26 USC §5845(a) and a destructive device, and obtain batteries without traceable markings, Mr. Li would not be facing such a devastating sentence. The guidelines were plainly manipulated by the government's agent. Therefore, it is patently unfair to permit Mr. Li to face a sentencing range that the government purposely inflated past anything he did on his own. Mr. Li made no efforts to provide anything to terrorist groups with intent to harm the Unites States outside of this offense generated by the federal government. Yes, he was a businessman in China. Yes, he was willing to sell products that might be illegal in certain nations. But he was not some kind of active supporter of terrorism. The sentencing range created by the government's artificially-inflated guidelines unfairly treats him as such. Objectively speaking, Mr. Li is surely no more culpable than the offender who sells machine guns to other countries in ways that could harm U.S. security interests without proper licenses. That offender would be at offense level 26. Therefore, his effective offense level for Mr. Li should be 26. With a criminal history category of I, his effective sentencing range should be 46-57 months. Any higher sentence rewards the government for aggressively and purposely inflating the sentencing guideline range by use undercover operations that fundamentally shape and increase the severity of the crime. That kind of behavior has been substantially criticized by the Circuit Courts of Appeals when analyzing the reverse sting line of cases. *See*, e.g., in *United States v. Kindle*, 698 F.3d 401 (7th Cir. 2012). And it should not be rewarded here. While the Court should not wholly discount Mr. Li's willingness to go along with the ideas presented to him by the agent, the doctrine of sentencing entrapment militates in favor of a sentence more in line with the offender who would be punished under USSG §2M5.2—level 26.

## IV. ABERRANT BEHAVIOR

Even prior to *Booker,* the Sentencing Guidelines gave district courts the discretion to impose a downward departure for "aberrant behavior." U.S.S.G. §5K2.20. To be eligible for a downward departure *under the Guidelines* a defendant must show that he was involved 1) in a single offense that was committed without significant planning, 2) was of limited duration, and 3) represents a marked deviation by the defendant from otherwise law-abiding conduct. Following *United States v. Booker*, a defendant's failure to establish each of the elements necessary for a downward departure under guidelines sections such as 5K2.20 no longer definitively dictates whether a sub-guideline sentence is warranted. Even where a defendant cannot meet the technical requirements necessary for a downward departure under the Guidelines, the facts offered in support of the defendant's argument must still be taken into consideration under §3553(a) and, therefore, may serve as the basis for the imposition of a below-guideline sentence. In this case, the facts that give rise to the possibility of an aberrant behavior reduction under §5K2.20 should also be considered in this Court's § 3553(a) analysis. Nevertheless, case law involving pre-*Booker* §5K2.20 reductions provides an instructive context in which to analyze Mr. Li's situation.

The defendant's request for an aberrant behavior reduction is based not only on the fact that he has no criminal history. It is also grounded in the fact that the nature of Mr. Li's life as a whole suggests that he is a generally law abiding person. He has a history of legitimate employ and pursuit of education. He is a devoted family man and dutiful son. He is actively involved with his temple and seeks to better himself and his community.

The aberrant behavior reduction is designed for those offenses committed over a limited period of time. Any involvement that Mr. Li had in this offense was of a fairly limited duration, stretched out by the repeated overtures of the undercover agent. Even involvement in more than one instance of criminal behavior is not an absolute prohibition to receiving the aberrant behavior reduction. In *United States v. Germosen*, 473 F.Supp.2d 221 (D.Mass. 2007), the district court granted a downward reduction for a defendant who was charged with and convicted for conspiracy to import heroin into the United States. In that case, the defendant agreed to transport heroin on two occasions prior to his arrest. *See also, United States v. Delvalle*, 967 F. Supp. 781 (E.D.N.Y. 1997) (defendant picked up a friend transporting narcotics to the airport on multiple occasions). The fact that the defendant may have engaged in criminal conduct that took place over the course of more than one date does render the behavior less aberrant.

Mr. Li's situation is similar to those drug defendants who transported narcotics but did not take any steps other than packing and going to the airport prior to actually acquiring and moving the narcotics. *See, e.g., United States v. Germosen*, 473 F.Supp.2d 221 (D.Mass. 2007) (defendant convicted of swallowing balloons of heroin and attempting to smuggle them into the United States); *United States v. DeRoover*, 36 F. Supp. 2d 531 (E.D.N.Y. 1999) (defendant convicted of transportation of heroin in to the United States from Amsterdam); *United States v. Delvalle*, 967 F. Supp. 781 (E.D.N.Y. 1997) (transportation of cocaine); *United States v. Patillo*, 817 F. Supp. 839 (C.D. Cal. 1993) (transportation of narcotics); *United States v. Blackwell*, 897 F. Supp. 586 (D.D.C. 1995) (noting that the defendant did not plan the details of the transportation scheme); *United States v Auyon* (transportation of ecstasy into the United States). In each drug case, the defendants necessarily had to purchase plane tickets, collect the narcotics, go to the airport or bus station and attempt to get on board. Similarly, in this case Mr. Li took a

series of steps that facilitated the crime in this case: communicating with multiple manufacturers and businesses to fulfill the requests made by the undercover agent. Yet, those actions were undoubtedly aberrant compared to Mr. Li's usual behavior, considering that they were all done only because of the explicit overtures of the undercover agent, as outlined above.

Prior to *Booker*, when determining if the aberrant behavior reduction was appropriate in a given case, courts considered a defendant's employment history and relationship to their community and family. *See United States v. Patillo*, 817 F. Supp. 839 (C.D. Cal. 1993) (defendant convicted of possession with the intent to deliver. The district court noted the defendant's lack of previous criminal history and steady employment record); *United States v. Pena*, 930 F.2d 1486 (10th Cir. 1991); (defendant convicted of possession with intent to distribute. The district court noted the defendant's long–term steady employment and financial support of herself and her children); *United States v. Delvalle*, 967 F. Supp. 781 (E.D.N.Y. 1997) (defendant convicted of conspiracy to possess with intent to distribute. The district court noted the defendant's steady employment at two jobs); *United States v. Ramirez*, 792 F. Supp. 922 (E.D.N.Y. 1992), (noting defendant's steady work history and continuing attempt to complete his education); *United States v. Langille*, 324 F.Supp.2d 38 (D. Me. 2004) (noting the defendant's employment history).

Mr. Li has been an employed and productive member of society his entire life, when not diligently working to better himself as a student at home and abroad. His educational dedication and familial devotion demonstrate that, outside of this incident, Mr. Li is the very kind of person that one could strive to be. His participation in this scheme is, by definition, an aberration when compared with his life as a whole. He is a studious and spiritual man with deep connections to his family, his community, and his country. Removing him from his community harms that

community far more than it serves any worthwhile purpose. Mr. Li is the very kind of person to whom the concept of aberrant behavior ought to apply. Any imposed prison sentence should be reduced to reflect this and return him to the community as soon as possible so that he may again positively contribute to his community, his family, and to society.

V.	**LACK OF CRIMINAL HISTORY AND DETERRENCE**

The Sentencing Commission has already demonstrated that individuals in Criminal History Category I, like Mr. Li, are the least likely defendants to recidivate. *See* Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, United States Sentencing Commission (2004) ("Measuring Recidivism") at 6(13.8 percent of offenders in CHC I recidivate compared to 55.2 percent in CHC VI).[1] Age is also a significant factor in recidivism. Defendants over the age of 50 in CHC I have a recidivism rate of only 6.2 percent. Measuring Recidivism at 28. It is also important to note that "[t]here is no apparent relationship between the sentencing guideline final offense level and recidivism risk." *Id.* at 13. Thus, in fashioning a sentence to deter, a sentence driven primarily by the offense level tends not to achieve this sentencing purpose. Mr. Li's total lack of prior criminal history, as well as his strong community ties demonstrate that it will not take a prison sentence to deter him. There is no evidence whatsoever that Mr. Li needs to be imprisoned for fifteen years in order to be deterred from ever committing any further crimes

To a person who has never before been in custody, the reality of prison is very daunting. There is no evidence suggesting that any significant prison sentence is necessary to deter a man

---

[1] This statistic included even technical supervised release revocations as "recidivism." If only additional convictions were counted the percentage drops below 5 percent. See Measuring Recidivism at 22.

11

who has Mr. Li's background and whose offense was so heavily defined by the actions of undercover government agents.

## VI.   INCAPACITATION AND REHABILITATION

Mr. Li's actions outside of this case demonstrate that he poses no threat to the public. He is an asset to any community he is in due to his civic activities. He is an asset to his family and the lives with which he comes into contact. And he will spend the rest of his life as a federal felon who will be deported to his home country and unable to reenter the United States. There is no reason to believe that Mr. Li requires prison in order to protect the public. The principle of incapacitation does not require a prison sentence. Likewise, all of Mr. Li's positive actions and good works in the community demonstrate that he is not in need of some sort of rehabilitation that only prison can provide. There is simply no evidence to support that notion in this case.

In addition, unlike the typical inmate, Mr. Li will not be released from jail at the end of his sentence. Mr. Li cannot legally remain in this country after his release. Because the offense to which Mr. Li pled guilty is an "aggravated felony" for purposes of the Immigration and National Security Act, immigration authorities will detain Mr. Li immediately upon his release from BOP custody pending removal proceedings before the Executive Office for Immigration Review (a/k/a the Immigration Courts). Unfortunately, the immigration system is severely backlogged, and there are approximately 375,000 cases currently pending before the Immigration Courts, with average processing times approaching 520 days. Campoy, Ana, *Clogged Immigration Courts Slow Hearings*, the Wall Street Journal, 11 August 2014 (last accessed at http://www.wsj.com/articles/clogged-immigration-courts-slow-hearings-1407800048).

Although Mr. Li's deportation will likely move somewhat faster than average because he will not contest removal, it is the opinion of Mr. Li's immigration attorneys that Mr. Li is likely

12

to be detained for three to six months before his removal proceeding is finalized. Then, even after his deportation has been ordered, Mr. Li will likely remain in custody for two or three additional months while U.S. authorities arrange for his return travel to China. Thus, a sentence of five years will actually amount to a sentence of six.

### VII. COOPERATION

When Mr. Li entered his guilty plea in this case, he agreed to cooperate with the government and testify when called. He has fulfilled all of his obligations whenever asked, and has indeed provided substantial assistance to the government. Mr. Li met with prosecutors from multiple federal districts on multiple occasions, fully and truthfully participating in multiple proffer sessions. He testified at a federal grand jury proceeding and remains willing to further cooperate with federal agents and attorneys if required.

The government is not making a motion for sentencing reduction under §5K1, but their agreement with Mr. Li allows him to argue for any lawful sentence. As far as Mr. Li understands, the government is fully satisfied with the nature and scope of his cooperative efforts. These efforts should be taken into consideration by the Court when determining the appropriate sentence under §3553. Mr. Li's willingness to fully disclose his own conduct and that of other persons of interest to the United States government demonstrates that he has accepted responsibility for his actions, recognized his mistakes, and already taken the first steps on the path toward full rehabilitation. Mr. Li understands now why what he did was wrong and will not make the same choices in the future. He has decided to atone for his misdeeds where possible, as demonstrated by his extensive cooperation, and seeks to make a better, law-abiding life for himself upon relief.

Mr. Li's substantial cooperative efforts warrant a sentence well below the statutory maximum.

## VII. Conclusion

Because Mr. Li is not a lifelong criminal and has already demonstrated that he is uniquely amenable to rehabilitation, a lengthy prison sentence is not appropriate. Mr. Li would not have engaged in this criminal activity if it had not been manipulatively engineered by law enforcement agents seeking to artificially inflate his possible sentence. Mr. Li nonetheless recognizes that he is not blameless and has already taken steps to help make up for his misdeeds through affirmative cooperation with law enforcement. Mr. Li's behavior in this case represents an aberration in the life of an otherwise law-abiding man who is a devoted family man, scholar, and worker. Mr. Li does not need to be incarcerated for 15 years to further any of the purposes of punishment. The time he has already served is more than sufficient to provide adequate deterrence, incapacitation, and rehabilitation. A sentence between 46 and 57 months is sufficient, but not greater than necessary, to reflect the seriousness of the offense and all of its attendant circumstances.

By: s/ Beau B. Brindley

Beau Brindley
LAW OFFICES OF BEAU B. BRINDLEY
53 West Jackson Blvd.
Suite 1410
Chicago, IL 60604
312-765-8878 (Phone)
312-276-8040 (Fax)